Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement, as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant-employer was an approved self-insured with Key Risk Management Services, Inc. acting as its servicing agent.
4. Prior to the beginning of the hearing the parties agreed plaintiff had been out of work for the following periods: 20 February 1995 through 7 March 1995; 8 August 1996 through 29 October 1996 and 31 October through 4 November 1996. Additionally, the parties agreed plaintiff had returned to work on 5 November 1996 at a reduced rate of pay.
5. By stipulation filed with the Commission on 31 December 1998, plaintiff's average weekly wage at the time of her injury was $329.30, yielding a compensation rate of $219.54.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in 1970. She worked in the position of service person, which required her to move socks defendant-employer manufactures from one station to another by cart.
2. On 16 November 1994, plaintiff was pushing a cart of socks, which was stacked approximately 2 + feet above her head, across the plant floor when the back right wheel broke causing the cart to nearly tip over. When the wheel broke, the cart jerked plaintiff. Plaintiff grabbed the cart and held it up until other co-workers came over and helped her steady the cart. Plaintiff immediately felt a burning in her back when the cart jerked her.
3. Immediately following this incident, plaintiff told Carolyn Bean, her supervisor, Carol Davis, lead person, and Jack Debeve, safety director for the plant, that she had hurt her back when the right rear wheel of a chart she was pushing broke. At the request of her supervisors, plaintiff provided written notice of the incident to defendants on 16 November 1994. The note written by plaintiff also indicates that Carol Davis wrote a report of the accident. Defendants have not filed a Form 19 in this matter concerning any accident of 16 November 1994.
4. After plaintiff told Mr. Debeve of her injury, he suggested that she soak in a hot tub and/or use hot towels on her back to relieve the pain. Mr. Debeve also told plaintiff that he would set up an appointment for her to be seen and treated by a doctor for her back. Mr. Debeve never made any appointments for plaintiff and she continued to work or she took vacation time when she was out of work due to the pain she was suffering as a result of her injury of 16 November 1994.
5. Plaintiff testified that on 17 February 1995, she was pushing a similar cart when a shelf broke, jamming a wheel causing it to stop suddenly. Plaintiff contends that this incident constitutes a second separate injury which exacerbated the 16 November 1994 injury. Plaintiff testified that after the incident she told her supervisor that her back was hurting and every day it got worse. Plaintiff did not state that she described the occurrence of a second incident to her supervisor. Plaintiff did not provide defendant with a report of the second injury, nor did she mention it to any of her subsequent treating physicians. A co-worker and long-time friend testified to having witnessed the February 1995 incident, but another co-worker did not recall having seen it happen. The undersigned find that plaintiff's testimony regarding the 17 February 1995 incident is not credible.
6. Plaintiff presented to Dr. John Kessel on 20 February 1995. Dr. Kessel diagnosed plaintiff with chronic low back pain and took plaintiff out of work following his examination, to return on 6 March 1995. Plaintiff provided Mr. Debeve a copy of Dr. Kessel's note removing her from work. Mr. Debeve told plaintiff that he could not honor Dr. Kessel's note and sent her to see Dr. Scott D. Hoffman. Dr. Hoffman diagnosed plaintiff's condition as chronic back pain, continued her out of work, and referred her to Dr. Jack dePerczel.
7. Dr. dePerczel saw plaintiff on 28 February 1995 and found her to have tenderness and spasm of the left low back, with motion producing left low back pain, and hip rotation and straight leg raising producing left low back pain. He diagnosed her condition as obvious muscle strain. In a letter sent to Dr. Hoffman, Dr. dePerczel noted that plaintiff informed him that her condition resulted from an injury at work on 16 November 1994, when a cart she was pushing with about sixty dozen of socks on it had its rear wheels come off, jerking plaintiff and she held it until co-workers came over and helped with the cart. There was no mention of any subsequent injury or incident.
8. Dr. dePerczel sent a copy of his letter addressed to Dr. Hoffman to Jack Debeve at Neuville Industries.
9. Plaintiff continued to experience problems with her back, and next presented to Dr. H. Grey Winfield, III on 28 March 1995. On the information form plaintiff filled out for Dr. Winfield, she discussed only the 16 November 1994 incident as the cause of her condition. Dr. Winfield diagnosed plaintiff with a soft tissue injury and treated her with medication. He did not write plaintiff out of work, but cautioned her against excessive pushing.
10. Plaintiff did not see another physician in relation to her back until 8 August, 1996, when she returned to Dr. Hoffman with complaints of lower back pain on the opposite side from that which she experienced when he saw her in 1995, mild abdominal pain, nausea and vomiting. Because plaintiff was presenting for the first time with leg pain, Dr. Hoffman suspected sciatic nerve involvement and referred plaintiff back to Dr. Winfield. He wrote plaintiff out of work until she could present to Dr. Winfield on 13 August 1996.
11. Dr. Winfield ordered an MRI which showed an extradural defect at L-5, which was either a disk herniation, a cyst, or a conjoined nerve root. He ordered a series of epidural blocks, each of which helped plaintiff for several weeks. By 28 October 1996, he released plaintiff to do light work duties. He continued to treat plaintiff conservatively through 5 November 1996, and finally recommended that she see a spine surgeon to consider surgery on the defect in her spine. He told plaintiff that it might not help her back pain, but if the defect was the cause of her leg pain, it would help that condition.
12. Dr. Winfield testified that because plaintiff presented in 1996 with symptoms different from those in 1995 and because eighteen months had passed between examinations, he believed that plaintiff most likely suffered from a disk herniation which she did not have in 1995 and which occurred sometime between his examination of plaintiff in March 1995 and when plaintiff presented in August 1996.
13. On 19 February 1997, plaintiff returned to Dr. Hoffman who referred her to spine specialist Dr. Alfred E. Geissele. Plaintiff presented to Dr. Geissele on 28 February 1997. Plaintiff gave a history limited to the 16 November 1994 incident, with an exacerbation of symptoms in the fall of 1996. An MRI confirmed degenerative disk disease at L-5 and seemed to support a diagnosis of spondylolysis.
14. When given a hypothetical which included a February 1995 second injury, Dr. Geissele stated that since plaintiff had been able to return to work after the 16 November 1994 incident, the second injury was most likely the one which would have aggravated a pre-existing condition which had been present since childhood. He further testified that it would be impossible to state whether plaintiff's spondylolysis had occurred as the result of trauma or of its own accord.
15. On 12 September 1997, Dr. Hoffman saw plaintiff for the final time and referred her to Dr. Peter D. Miller. Plaintiff presented to Dr. Miller on 15 September 1997, when she gave him a history of injuring her back on 16 November 1994. Dr. Miller diagnosed a lumbar radiculopathy. Following an examination and testing, on 22 September 1997 Dr. Miller found plaintiff hadparas interarticularis defect at the L5 level. There was no evidence of spondylolosthesis. He stated that the defect in the bone could have been post-traumatic or congenital or degenerative, but could not tell which it was, or if it had been present on 16 November 1994. He placed plaintiff in a back brace which achieved positive results over the following month.
16. Dr. Miller performed surgery on plaintiff's back on 11 November 1997. The operation revealed a parasinterarticularis defect. Dr. Miller stated that there was no way of knowing whether it had developed over the past two years or had been there for several years. The operation was successful, and plaintiff showed continuing improvement through the date of Dr. Miller's deposition. Plaintiff has not been released to return to work, nor has she reached maximum medical improvement.
17. In 1995 and 1996 plaintiff maintained contact with Janice Sherrill, James Moore and Claudine Bynum, adjusters or employees of Key Risk Management Services (hereinafter Key Risk). Plaintiff requested that defendant-employer provide Key Risk with copies of her medical records. Through November 1996, Key Risk did not provide such records, but continually informed plaintiff that they were looking into her case.
18. Linda Auton, plaintiff's daughter began contacting the defendant-employer and Key Risk in August 1996. She spoke with Janice Sherrill and Claudine Bynum. She spoke with Ms. Bynum at least twice and with Ms. Sherrill at least once every two weeks from August 1996 through November 1996, when she was informed that plaintiff's claim had been denied. She on behalf of plaintiff provided defendants with copies of plaintiff's medical records. She obtained Ms. Bynum and Ms. Sherrill's names from defendant-employer. When she would contact Ms. Sherrill or Ms. Bynum concerning the status of plaintiff's claim, she was told that they were investigating plaintiff's claim.
19. Even though plaintiff's initial injury was on 16 November 1994, Key Risk notified plaintiff for the first time that her claim was being denied. Defendants waited until after the two-year statute of limitation expired to inform plaintiff that they were denying her claim. Prior to informing her of their denial, they had paid part of her medical expenses and were directing her medical care. While they were not accepting the written medical notes from doctors of plaintiff's choice as being valid excuses to be absent from work, they were accepting the medical notes of doctors of defendants choosing as being valid excuses for being absent from work. Defendants' act of continually assuring plaintiff that they were looking into her claim lulled her into a false sense of security and justifiable reliance that they would handle her claim.
20. Janice Sherrill, the adjuster assigned to plaintiff's claim by Key Risk, recalls talking with plaintiff and plaintiff's daughter about obtaining plaintiff's medical records. She does not recall how many times she talked to plaintiff or her daughter. She stated that at no time did she tell plaintiff or her daughter that plaintiff's claim had been accepted or denied.
21. Immediately after plaintiff received defendants' denial of her claims, she contacted an attorney and filed a Form 18 and Form 33 within four days of defendants' dated Form 61.
22. Plaintiff's average weekly wage for the twelve months preceding her injury was $329.30, yielding a compensation rate of $219.54.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury due to a specific traumatic incident on 16 November 1994, while in the course and scope of her employment with defendant-employer, and as a consequence she is entitled to temporary total disability benefits at the rate of $219.54 per week from 20 February 1995 through 6 March 1995. However, there is insufficient competent evidence to support a conclusion that plaintiff suffered a second work-related injury in February 1995. N.C. Gen. Stat. §§ 97-2(6), 29.
2. Defendants are hereby estopped from raising the two year statute of limitation as a bar to plaintiff's November 16, 1994 claim, due to their misleading of plaintiff that they were going to pay her claim and then failing to inform plaintiff that the claim was being denied until after the two year statutory period for her to file her claim had expired. See Weston v. SearsRoebuck Co., 65 N.C. App. 309, 309 S.E.2d 273 (1983),disc. review denied, 311 N.C. 407, 319 S.E.2d 281
(1984).
3. Even though plaintiff suffered a specific traumatic incident injury to her back, the greater weight of the medical evidence does not support the conclusion that her subsequent disabling physical injury was causally related to that incident. Accordingly, plaintiff is not eligible for medical, temporary total, or temporary partial compensation after she was released to return to work and did in fact return to work in 1995.Lettley v. Trash Removal Serv., 91 N.C. App. 625,372 S.E.2d 747 (1988).
 ***********
Considering the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter awarded, defendants shall pay to plaintiff temporary total disability benefits at the rate of $219.54 per week from 20 February 1995 through 6 March 1995. Said payment shall be made in a lump sum.
2. Insofar as they have not already done so, defendants shall pay plaintiff's medical expenses related to her treatment for the back injury sustained in the 16 November 1994 specific traumatic incident.
3. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff pursuant to Paragraph 1 above is hereby awarded to plaintiff's counsel.
4. All further claims raised by plaintiff under the Act are hereby denied.
5. The parties shall divide the costs of this action.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
DCS:jbd